114 So.2d 575

**Elijah L. JONES**

v.

**STATE.**

**2 Div. 994.**

Court of Appeals of Alabama.

Aug. 18, 1959.

Rehearing Denied Sept. 15, 1959.

———◆———

Pitts & Pitts and Cecil C. Jackson, Jr., Selma, for appellant.

John Patterson, Atty. Gen., and Jerry L. Coe, Asst. Atty. Gen., for the State.

PRICE, Judge.

Elijah L. Jones appeals from a judgment of the Circuit Court of Dallas County on a charge of permitting or allowing "James Westley Pierson to have, possess, operate or locate on his premises, an apparatus, plant or structure for the distilling or manufacturing of prohibited liquors or beverages." Sec. 136, Title 29, Code 1940. A fine of Five Hundred Dollars was imposed by the jury and the court sentenced the defendant to six months hard labor for the County as additional punishment for said offense.

In the month of September, 1956, about 2 o'clock in the afternoon, a still, in actual operation, was raided by Frank Farish and R. H. Dickinson, Investigators for the Government Alcoholic Tax Unit, Ben Scroggins, Enforcement Agent with Alabama Beverage Control Board, and A. J. Frazier, Deputy Sheriff of Dallas County. Four individuals, James Westley Pierson, James O'Rear, Jeff Allen, and another whose name does not appear in the record, were arrested at the still.

The still consisted of six round aluminum tanks, five of which had an estimated capacity of 1200 gallons each, and the sixth had a capacity of 1000 gallons. The tanks were heated with fuel oil burners.

Frank Farish testified the still was a mile east of the Phillips Hill Road, which is approximately seven miles Northeast of Selma. The only access to the still area is had by traveling the Phillips Hill Road to a turn off known as the Pea Ridge Road; that from the latter road there is a turn off into a pasture; that the still was located in the pasture about three-eighths of a mile from the gate. Defendant, Elijah L. Jones, lived on the Pea Ridge Road about 200 to 225 yards from the turn off which leads into defendant's pasture and goes within a few feet of his barns and past a dwelling house known as the Pasture House and on to the still. Just North of the still is a branch with a swampy area grown up in small timber. To the South was a slight hill, and immediately out from the still was an open area of about an acre; that the turn off road came to a dead-end, with a

turn around circle near the still, with no other road beyond that point. The distance from Elijah L. Jones' house to the still was estimated to be about 1000 yards, with the pasture house halfway between the still and defendant's residence.

Farish testified to a conversation with defendant at the jail later in the day after the raid, in which conversation Jones admitted he owned the land and was pasturing it; that he had cattle in there and he was in the pasture almost every day and had been to the open area adjoining the still, but he didn't know the still was there.

Testifying as an expert in his field, Farish stated in his opinion the still had been in operation for two months and was a complete still; that the spent mash, residue or waste after the live mash has been distilled, was scattered over the major part of the open area adjoining the still, and this is the area where defendant said he went.

Richard H. Dickinson testified to substantially the same facts as did the witness Farish. He testified that the distillers were living in the pasture house at the time the still was raided. He also testified to a conversation with defendant at the jail in which defendant admitted he owned the land where the still was located; that he had driven out to the pasture several times a week, but he did not know the still was there.

Ben Scroggins testified to substantially the same facts as did the witnesses Farish and Dickinson.

Carl Shaaphok testified he had known the defendant for about a year and knew him during July 1957; that he knew the location of defendant's house and that he had been to the still. In July he hauled a load of sugar to the still from Birmingham. He was paid for hauling the sugar on different occasions by Joe Stephens, Cecil Shivers and Elijah Jones. On one occasion Jones paid him for the sugar at Jones' Cafe in Selma; that on this occasion defendant told witness to take the money out of the glove compartment of defendant's car. At another time defendant paid witness for a load of whiskey he had delivered. On this occasion he met defendant on the highway and was told to get the money out of a mail box just outside Selma on a cut off from the main highway. Shaaphok testified he approached the still at the time it was being raided; that he went to Selma and telephoned the Dallas Cafe and asked for defendant; that he knew Jones' voice and to the best of his knowledge he talked to defendant and told him about the raid, to which defendant replied "all right, get in in touch with me later." When he brought sugar to the still he contacted defendant before he delivered the sugar. Shaaphok admitted he was presently under indictment in the Dallas County Court on a charge of second degree burglary and that he had previously been convicted for transporting a stolen motor vehicle. The witness testified both on direct and cross-examination that the events to which he testified concerning the still transpired in 1957. Later, having been recalled, he testified he had made a mistake and the year to which he referred was 1956.

For the defendant, O. W. Massey testified he kept cattle on defendant's place in an area that was fenced off from the still area. The witness said he went "in there" from three to five times a week over a period of four or five months and did not smell any odors or fumes or see any mash or anything to indicate a still was there until after it was blown up; that so far as he knew defendant never went in the still area.

E. D. Majors testified before the still was found he leased the entire pasture from defendant. The lease included the pasture house, and witness was to get rent from the occupants of this house. Under the lease agreement witness was not to take possession until January 1, 1957, and he did not move cattle to the pasture until March, 1957; that witness was in the area two or three times before the still was found and did not smell odors of alcoholic drinks or mash.

Clifford Stone testified he traveled the Pea Ridge Road frequently in 1956, and saw nothing to indicate a still.

Sol Tepper testified he owned land in the area which he visited three to seven times a week and saw nothing to indicate a still was in existence.

Elijah L. Jones, the defendant, testified that prior to the finding of the still he leased the pasture house and two square acres to Joe and June Argo; that he did not know a still was on his premises until he was arrested; that he had not smelled fumes or odor or seen smoke or anything to indicate a still; that according to the terms of the lease, which was never signed, there was to be no unlawful use of the premises. Defendant testified that he did not receive a phone call from Shaaphok on the day of the raid; that he knew no one by the name of Shaaphok and never saw or spoke to him before the day of the trial. Defendant further testified that two of the men arrested at the still said they were living in the pasture house at the time of the raid, but they were not the persons to whom he rented the place, that the name James Pearson also appeared on the written lease and over the name James Pearson appeared J. W. P., and a man named James Wesley Pierson was arrested at the still, but the James Pearson to whom he leased the house was a different person to the James Wesley Pierson who was convicted for distilling. Defendant also testified he claimed the land upon which the still was found.

Section 136, Title 29, Code, supra, provides: "When such apparatus, plant or structure is found upon said premises, the fact shall be prima facie evidence that the tenant or owner in actual possession of the premises has knowledge of the existence of the same, and of the purpose for which the same were to be used."

 Counsel argues the insufficiency of the evidence to sustain the verdict, in that, (1) it is not shown that defendant owned the land upon which the still was located, (2) the state has failed to meet the burden cast on it to prove by the evidence under the required rules, every material ingredient of the offense charged, (3) the only evidence tending to connect defendant with the still consisted of the testimony of State's witness Shaaphok, who was under indictment for burglary and motor theft and whose statements were impeached in various aspects.

In addition to the testimony of State's witnesses that defendant claimed the land on which the still was located the defendant testified on cross-examination:

"Q. So where the still is located, that was all on your land, wasn't it? A. Well, I wouldn't say about that. It is confused, so close. I claim it.

"Q. You still claim it? A. Yes sir.

"Q. And have got it fenced in? A. Yes, sir; until there is a line run.

"Q. In 1956 that was your land, wasn't it? A. Yes sir."

We are of opinion this testimony clearly established the defendant as "the tenant or owner in actual possession of the premises" within the meaning of the statute and the state was not required to prove defendant's actual legal title to the premises.

It was within the province of the jury to decide the weight or credibility they would give to the testimony of the witnesses, both for the state and defendant.

It is an established rule in cases of this character that a verdict of conviction should not be set aside on the ground of the insufficiency of the evidence to sustain the verdict, unless, after allowing all reasonable presumptions of its correctness, the preponderance of the evidence against the verdict is so decided as to clearly convince the court that it is wrong and unjust. Cobb v. Malone, 92 Ala. 630, 9 So. 738; Stewart v. State, 38 Ala.App. 365, 84 So.2d 658, 660; Evans v. State, 39 Ala.App. 404, 103 So.2d 40, certiorari denied 267 Ala. 695, 103 So.2d 44.

Under these rules we cannot say that the verdict of the jury was so patently against the weight of the evidence as to clearly convince us that it was wrong and unjust.

There was no error in the trial court's refusal to give the requested affirmative charge in defendant's behalf, nor in the denial of the motion for a new trial.

The judgment is affirmed.

Affirmed.