HARRIS, Judge.
Appellant was convicted of grand larceny and the Court sentenced him to six years in the penitentiary. Appellant was represented at arraignment and trial by retained counsel who represents him on this appeal. When sentence was imposed, appellant gave notice of appeal. The sentence was suspended pending appeal and the appeal bond was fixed at $2,000.00.
The evidence in this case is in hopeless conflict and was peculiarly within the province of the jury to resolve.
Omitting the formal parts the indictment reads as follows:
“The Grand Jury of said county charge that before the finding of this indictment, Gary Bennett Smith, alias Gary Smith, whose name is otherwise unknown to the Grand Jury, feloniously took and carried away one Sears 7 horsepower outboard motor, color, green shaft and white top, a further and better description of which is otherwise unknown to the Grand Jury, of the value of $175.00, the personal property of Mitchell Gay, against the peace and dignity of the State of Alabama.”
This was appellant’s second trial on the above-quoted indictment. The first trial resulted in a mistrial when the jury was unable to reach a verdict.
The evidence adduced by the State tended to show that Mitchell Gay, the person *1031 from whom the outboard motor was allegedly stolen, lived in Midfield, Jefferson County, Alabama and was employed by J. C. Penney’s. In September, 1975, he was due a vacation and he, his wife and little boy decided to camp out on Smith Lake in Cullman County. They arrived at the Big Bridge Pishing Camp on September 16, 1975, and rented a boat from Mr. Ted William Wagnon who owned and operated this fishing camp. Mr. Gay was in the process of buying the motor described in the indictment and he put it on the rented boat and carried it to a boat pier near the place where he pitched his tent. He pulled the boat and motor upon the boat dock for the night, with the motor just barely sticking off the end of the dock.
The next morning Mr. Gay noticed a boat approaching his boat from about a hundred yards away and moving very slowly. Mr. Gay ran to where his boat and motor were on the dock where he had put them the afternoon before. The approaching boat had three men in it and was a two-tone gold or brownish-gold type of boat. When Mr. Gay got within 50 to 75 feet of his boat he saw appellant take his motor off his boat and pass it back to another man in the middle of the two-tone boat. Mr. Gay said, “Hey, what are you doing?” At this point the men in the two-tone boat realized they were caught red-handed and they started their motor and pulled out into the lake, and they did not say anything.
As the two-tone boat pulled away from the dock and headed out into the lake, Mr. Gay was able to see the boat number on the side next to him and he ran back to his truck and wrote down the number. The number he was able to see was “AL 1269.” He then drove his truck to a Mr. Stricklin’s mobile home and called the Sheriff of Walker County and gave him the boat number and reported that they had stolen his motor. He then returned to his campsite and joined his wife and little boy.
Mr. Gay further testified that his motor was fastened to the rented boat by two screws and he also tied the motor to the boat with a rope. He noticed that the rope had been cut. Gay’s motor was never seen again after he saw appellant put it in the two-tone boat.
Mrs. Gay saw her husband run to his truck and leave the campsite. She looked out on the lake and saw a gold tri-hull bass boat with two seats and a large dark motor on the back of the boat. The boat was not moving and there were three men in it. She heard loud talking and laughter and then a splash as though a large object was being thrown into the water. Nothing obstructed her view as she observed the boat for two or three minutes. She saw the boat leave in the direction of the Big Bridge Fishing Camp. Later in the day she saw the same boat at the courthouse. Neither Mr. or Mrs. Gay saw another boat on the lake that morning. Mrs. Gay described the clothing worn by the three men in the Smith boat. They were wearing the same clothing when she saw them later at the Sheriff’s Office on that same date.
Mr. Wagnon arrived at Gay’s boat dock about ten minutes after the men took Mr. Gay’s motor off his boat, and they went up the lake in search of the boat. They saw a boat coming out of another part of the lake and they went after it. They stopped this boat and Gay stated that this boat had the same number which he had written down and reported to the Sheriff. A cursing conversation started and the men in the boat denied having seen or stolen a motor and they told the men to go. Wagnon started to crank his motor without success and the men in the other boat offered to tow them in and this offer was refused.
In the boat with Wagnon and Gay was a man by the name of Earl Chappell. Wag-non had a shotgun in the boat with him. They got within six or seven feet of the Smith boat and did not see a motor inside the boat nor did they see any fishing tackle in the Smith boat.
Wagnon testified that he owned Big Bridge Fishing Camp on Smith Lake and that Gay rented a boat from him on September 16,1975. He stated that the men in the Smith boat had been in his store on the morning of September 17, 1975, and this *1032 was before he got a call from Gay. He said these men did not buy any fishing equipment. He stated that it was raining at this time. Wagnon further testified that he did not see any other boats on the lake that morning. He stated that the boat number on the Smith boat was AL 1269, and the other letters on that side were missing.
James L. Kennedy testified for the defense and stated that the boat that Smith was using belonged to him and that the boat had at all times about $200.00 worth of fishing tackle in it.
Appellant and the other two occupants of the Smith boat all testified and denied seeing or stealing Mr. Gay’s motor. After being stopped on the lake and no motor being found in their boat, they went to the Big Bridge Fishing Camp and put the boat on a trailer and started for home. They were stopped on the highway by a Deputy Sheriff and carried to the courthouse in Cullman where they were arrested and charged with the theft of the Gay outboard motor.
Mr. W. E. Cotton was called as a character witness for appellant and testified that appellant’s general reputation in the community in which he lived was good, and that he would believe him on oath whether he was interested or not.
There was no motion to exclude the State’s evidence and no exceptions were reserved to the Court’s oral charge to the jury. As a matter of fact at the conclusion of the oral charge appellant’s counsel announced, “no exceptions.”
Appellant did file a motion for a new trial in which he raised the issue as to the sufficiency of the State’s evidence. He also claimed that the Court erred in refusing a number of written charges.
No testimony was taken on the motion for a new trial but briefs on the law were submitted. The motion for a new trial was overruled and denied and that is the only insistence of error on this appeal.
Appellant characterizes the testimony of the State’s key witness as being “suspect.” As a matter of fact he states that the testimony of all the State witnesses was “suspect.” This argument would be more appropriately addressed to the fact finding body. The jury, not this Court, passes on the credibility of witnesses and the weight and probative value of their testimony. Braswell v. State, 51 Ala.App. 179, 283 So.2d 630.
This Court has held on numerous occasions that the numerical number of witnesses in a criminal trial is not the basis for determining the issue as to guilt because a fact may be established as firmly by the testimony of one witness as by the testimony of an entire community. Smith v. State, 53 Ala.App. 27, 296 So.2d 925; Waters v. State, 55 Ala.App. 646, 318 So.2d 342; Godbee v. State, 56 Ala.App. 174, 320 So.2d 107.
Conflicting evidence always presents a question for the jury as to the guilt of the accused, and a verdict rendered thereon will not be disturbed on appeal. Waters v. State, 55 Ala.App. 646, 318 So.2d 342; Jones v. State, 55 Ala.App. 466, 316 So.2d 713; Morris v. State, 47 Ala.App. 132, 251 So.2d 629.
In reviewing the refusal of a motion for a new trial this Court will indulge every presumption in favor of the correctness of the ruling of the trial judge and a decision thereon rests largely within the discretion of the trial court. Clark v. State, 54 Ala. App. 217, 307 So.2d 28; Moore v. State, 52 Ala.App. 179, 290 So.2d 246; Johnson v. State, 51 Ala.App. 172, 283 So.2d 624.
We have carefully considered all of the refused charges in the light of the thorough and comprehensive oral charge of the Court. Many of the refused charges were affirmative in nature and, therefore, properly refused. Some of the refused charges were incorrect statements of the applicable law, or argumentative in nature. The refused charges stating correct principles of law were adequately and substantially covered in the oral charge. Title 7, Section 273, Code of Alabama 1940.
The Court orally charged the jury on the burden of proof; the presumption of inno *1033 cence as a fact to be considered as evidence in the case; that each juror must be satisfied from the evidence that the defendant is guilty as charged beyond a reasonable doubt; and the verdict rendered must be the verdict of each and every member of the jury and must be a unanimous verdict. The Court further charged the jury on the effect of good character evidence and the right of the defendant to testify and that his testimony must not be disregarded. He charged the jury on the credibility of the witnesses and the elements of grand larceny. The Court fully charged the jury on all phases of the law applicable to the charge laid in the indictment and that the indictment was not evidence against the defendant and must not be considered as evidence against him. So complete was the oral charge on all phases of the law that appellant took no exceptions thereto.
We have carefully examined the entire record for errors which injuriously affected the substantial rights of appellant and have found none. Accordingly, the judgment of conviction is due to be affirmed.
AFFIRMED.
All the judges concur.