TYSON, Presiding Judge.
The appellant was indicted for the robbery of one Claxton Carter by taking some $7,000.00 in currency, one tape recorder, one leather suit bag, a pair of eyeglasses, two thirty-eight caliber pistols, four eight-track tapes, and some clothing from his person and by putting him in fear. The trial jury found the' appellant guilty as charged, and fixed punishment at twenty years imprisonment. The trial court then entered judgment, setting sentence in accordance with this verdict, and following a hearing on the motion for new trial, which challenged the lineup identification and the weight and sufficiency of the evidence, the motion was denied.
On the early morning of May 4, 1975, Mrs. Pauline Carter returned to her home at 620 Lisa Lane in Roebuck Forest, Birmingham, from the New Spot Lounge, a night club, which she owned and operated along with her husband, Claxton Carter. Upon entering her home and proceeding to a back room, which was being utilized as an office, she was seized by two men and carried into her bedroom where she was bound, gagged, and blindfolded, then laid across the bed. She testified at trial that the two men wore ski masks, and after tying her up began to ransack her home, but she realized from statements which they made to each other that they were waiting upon her husband’s return as they wanted the proceeds of their operations from the night club. She overheard the two men make such statements as they knew the Carters had had a “good night” at the club, that they knew Mr. Carter had heart trouble, and that she had a bad hip. They also said that friends referred to her husband as “Carter.”
Mr. Carter arrived at his residence about two hours later, where he, too, was bound, gagged, and blindfolded, and the proceeds of the night’s operations at the club were taken from him. Mr. Carter stated that he did not see the faces of the two men, but he overheard them talking and felt that he could recognize their voices. Mr. Carter stated that the men continued to threaten him and stated that they would kill him if he did not tell them where the “money box” was. He stated that he asked them several times where his wife was. He told them after repeated questioning, “That’s all the money I have, it is in the desk and that is all I brought back home.” He stated that the men wore ski masks and had on gloves, that because of this he did not get- a good look at their faces. He was asked on cross-examination if either of the men had a mustache, and he replied that he did not know, that he did not see one.
Mrs. Carter stated on cross-examination that because the two men removed her blindfold so that she could identify the automobile keys, she got a fleeting glance at one of the men’s face as he had removed his ski mask at this time. Mrs. Carter testified that after the men fled, she was able to struggle and free herself, that she then telephoned the police.
Birmingham Detective Sergeant Lavon Coleman testified that he investigated the robbery of the Carter home in May, 1975. He testified that he also arrested the appellant on May 22, 1975, and that he did not have a warrant at this time. He testified at trial that he had received information from a confidential, reliable informant that he had used over a period of six or eight years that Paul Marion Swicegood had participated in the robbery of the Carter home. Coleman stated that his informant had proven reliable' many times over a several year period, that information received from this informant had led to many trials and convictions. He estimated that he had made at least a dozen convictions in the past four to five years on information from this informant.
Officer Coleman stated at trial that he went to the appellant’s home and advised him that he was under arrest from suspi *808 cion of a robbery, and also told him that he was under arrest because he had a prior felony record and was in possession of a pistol.
The appellant was placed in a lineup at police headquarters the following day, May 23,1975, where he was represented by counsel, the Honorable James Jolly. The appellant was one of five in a lineup, and each of these men were required to make an appearance in ski mask and speaks certain words, then to make a second appearance without the mask and to speak certain words.
Mrs. Carter identified the appellant on his second appearance by his voice and by his appearance, and Mr. Carter recognized him, also on his second appearance by his manner of speaking and the way he answered certain questions which were asked of him. Both Mr. and Mrs. Carter testified that they did not communicate with each other between the appearances of the appellant in the lineup, nor did they communicate with Sergeant Coleman or any of the other officers present at this time.
Upon cross-examination Officer Coleman did state that after both Mr. and Mrs. Carter had selected the appellant from the lineup he could have stated to them, “That’s the suspect we had.”
Birmingham Police Officer P. T. Hurst testified he participated in the lineup which was conducted May 23,1975, at police headquarters in which the appellant appeared. Officer Hurst stated that there were five males placed in the lineup, all of them between five feet seven and five feet ten, and between 155 and 170 pounds. He testified the ages varied from the mid twenties to the mid thirties. He testified the appellant did have a mustache at the time of the lineup. He also testified that he did not communicate with either Mr. or Mrs. Carter between the two appearances of the appellant at the lineup. In fact he stated he had no conversations with either of them during the lineup procedures.
At the close of the State’s case, the appellant made a motion to exclude, which was overruled. The appellant did not testify at trial. He did, however, present the testimony of Elaine Spurlin Walters, Jackie Spur-lin, and Jean Sadler, all of whom testified that they were with the appellant on May 4, 1975, and drove with him to the Winston 500 Race at Talladega, Alabama, that they were not in Birmingham on the date in question.
The appellant also presented the testimony of one John Ryan, who testified that he passed the appellant on May 4, 1975, that appellant told him that he was going to the races at Talladega that day.
Larry Todd also testified for the appellant and stated that he had seen him on the morning of May 4, 1975, as he was getting ready to go fishing, and that appellant asked him to go to the races at Talladega with him.
The State called Larry Todd in rebuttal, and he admitted to a burglary conviction in 1969. The State also called John Ryan, and he admitted to a conviction in 1970 for buying, receiving, and concealing stolen property.
I
The appellant first contends that he was denied the effective assistance of counsel at the lineup identification because the attorney who represented him at this time was an acquaintance of Mr. and Mrs. Carter. Counsel also urges this Court to adopt more stringent standards with reference to representation by counsel at a lineup identification than is presently required under the opinion of the Supreme Court of the United States in Kirby, v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411.
This Court is fully committed to the position that where, as here, the lineup identification took place prior to indictment, representation by counsel is not required. Haggler v. State, 49 Ala.App. 259, 270 So.2d 690; Havard v. State, 50 Ala.App. 147, 277 So.2d 421; Hall v. State, 50 Ala. App. 666, 282 So.2d 104.
II
Appellant contends next that the lineup procedures were unduly suggestive, *809 that Mrs. Carter only had a brief glimpse of one of the assailants’ face as she was being asked about the keys to the automobile, and that Mr. Carter did not, by his own admission, see either of the men, as they were wearing ski masks. He maintains also that because the men were required to appear twice at the lineup on May 23, 1975, and that because both Mr. and Mrs. Carter did not positively identify the appellant until his second appearance, there was opportunity for comparison and conversation between the Carters and the police officers.
Both Mr. and Mrs. Carter testified that they did not communicate with each other, or with any of the officers present at the lineup procedure when they identified the appellant. Each stated that they were positive because of the voice and the statements made about Mr. Carter’s heart condition and of the operations of the night club, and the monies which would be with them. Each stated that they recognized the appellant’s voice as being the voice they heard in their home on the night of the robbery. Each stated that their identification was based upon the voice they heard at their home on the night of the robbery, and each positively identified the appellant in court at trial. Moreover, Mrs. Carter stated that she positively remembered the appellant by viewing him on the night of the robbery, May 4, 1975, at her home.
The law governing a situation as is here presented is well stated by Judge Harris, speaking for this Court in Smith v. State, 53 Ala.App. 27, 296 So.2d 925, as follows:
“The law is that a verdict of conviction should not be set aside on the ground of the insufficiency of the evidence to sustain it, unless, after allowing all reasonable presumptions of its correctness, the preponderance of the evidence against the verdict is so decided as to clearly convince the court that it was wrong and unjust. We are not so convinced. Bridges v. State, 284 Ala. 412, 225 So.2d 821; Jones v. State, 40 Ala.App. 419, 114 So.2d 575.
“A fact may be established as firmly by the testimony of one witness as by the testimony of an entire community. Gray v. State, 38 Ala.App. 508, 88 So.2d 798; Nabors v. State, 82 Ala. 8, 2 So. 357.”
This Court is without warrant to disturb the verdict of the jury where the evidence, as here, is conflicting. Hines v. State, 260 Ala. 668, 72 So.2d 296; Oury v. State, 53 Ala.App. 240, 298 So.2d 661.
We are of the opinion that the trial court here properly admitted the in-court identification of the appellant, and also properly determined that the lineup was not unduly suggestive. Cannon v. State, 53 Ala.App. 509, 301 So.2d 272; and authorities herein cited.
Ill
We have carefully examined the record and determined from the testimony of Sergeant Coleman that there was sufficient information possessed by him upon which to arrest the appellant. He was aware that a felony had been committed, and that the appellant was a participant therein. He was also aware of the appellant’s past criminal record. Title 15, Section 154, Code of Alabama 1940; Duncan v. State, 278 Ala. 145, 176 So.2d 840; Bridges v. State, 52 Ala.App. 546, 295 So.2d 266.
We have carefully examined this record, as required by law, and find no error therein. The judgment of the trial court is due to be and the same is hereby
AFFIRMED.
All the Judges concur.
On Rehearing
Application Overruled.
TYSON, P. J., and HARRIS, DeCARLO and BOWEN, JJ., concur.
BOOKOUT, J., dissents.