# Jackson *v.* The State.

### *Indictment for Assault with Intent to Murder.*

1. *Challenge of juror for cause.*—It being shown to the court, during the organization of the petit jury in a criminal case, that one of the jurors has been convicted of a felony and has not been pardoned, the court may refuse to exclude him unless challenged for cause; and the challenge being then interposed and allowed, there is nothing in this action of which the defendant can complain.

[Jackson v. The State.]

2. *Admission, and subsequent exclusion of evidence.*—When evidence which has been improperly admitted, against objection, is afterwards excluded, and the jury instructed not to consider it for any purpose, the error in admitting it is cured; and if the party who objected to its admission at first, also objects to its subsequent exclusion when proposed, he can not complain because the court then allows it to remain before the jury.

3. *Proof of good character; effect of.*—On a prosecution for an assault with intent to murder, the defendant having testified as a witness for himself, and also adduced "evidence of his good character," although his character has not been assailed, the court may instruct the jury that they can not look to the evidence of good character in determining the credibility of his own testimony.

4. *Assault with intent to murder; charge ignoring or qualifying intent.* An intent to take life is an essential element of an assault with intent to murder, and must be proved to the satisfaction of the jury; but, like the malicious intent in murder, it may be inferred by them from the character of the assault, the use of a deadly weapon, and other attendant circumstances; and while a charge should not be given which ignores the question of intent, or authorizes a conviction without satisfactory proof of it, one is properly refused which adds other words by way of emphasizing or particularizing the intent, as *positive, deliberate, actual, specific, &c.*

5. *Using deadly weapon in resistance of threatened assault.*—To justify the use of a deadly weapon in resistance of a threatened assault, (1) the party himself must be free from fault in bringing on the difficulty, (2) he must have no reasonable room or ground of escape from threatened injury, and (3) the threatened assault must be of such character that, if effectuated, it would be likely to produce death or grievous bodily harm.

6. *Presumption of want of intent to kill from voluntary act of desisting.* A presumption that the defendant did not have the intent to kill does not arise, as matter of law, from the fact that, when he had his adversary down and in his power, he voluntary desisted.

FROM the Circuit Court of Conecuh.

Tried before the Hon. JOHN P. HUBBARD.

The defendant in this case, Charlie Jackson, was indicted, jointly with Ben Aarons, for an assault on Aleck Thomas, with the intent to murder him; and a severance having been granted, he pleaded not guilty, but the jury returned a verdict of "guilty," and imposed on him a fine of $250. During the organization of the jury, the defendant reserved an exception to the refusal of the court to exclude one A. G. Smith as juror, unless he was challenged for cause; but, the challenge being then interposed, and the facts admitted, the juror was excluded. It was proved on the trial that the difficulty between the parties occurred in August, 1888, at a meeting of a society of which they were members, and of which one Isaac Williams was president, and Jim Dunklin secretary. The meeting was called at the instance of the defendant, to investigate charges or complaints as to the expenditure or use of moneys by the secretary. After some debate, the defendant was asked if he was satisfied, and answered that he was. Some member then

said : "No, he is not satisfied ; it is like when he called sister Thomas a liar the other day." Defendant said, "She is a liar ;" and on Thomas telling him that he must not call his wife a liar, he repeated the words. He and Thomas were then sitting about eight or ten feet apart, and Thomas testified that, as he reached out his hand for a piece of broom handle standing near, and attempted to rise, defendant "ran in under his arms, clinched and threw him, and cut him several times with a knife." The testimony of other witnesses was substantially the same. The parties were separated by the other persons present, against the remonstrance of Ben Aarons, who wanted them to fight. Jim Dunklin assisted in separating them, and caught the defendant by the leg in pulling him off; and the defendant insisted that Dunklin kicked him. On rising to his feet, the defendant started towards Dunklin, still having the knife open in his hand ; but Dunklin ran out of the room, and escaped, though pursued for a short distance by the defendant. The defendant soon came back into the room, and Dunklin returned in about ten minutes, having something in his hand. On coming into the room, Dunklin said, "Did you all see that rascal trying to cut me,?" and attempted to throw a stone at defendant, or whatever he had in his hand ; but defendant dodged among the bystanders, until he picked up something from the floor, and he and Dunklin each threw at the other. Dunklin again ran out of the room, and the defendant after him ; and Dunklin having stumbled and fallen, the defendant assaulted him, and cut him with his knife. The defendant objected to the testimony of the several witnesses as to the particulars of the difficulty between himself and Dunklin, and excepted to the admission of the evidence. The bill of exceptions afterwards adds : "The State having here closed, the court excluded all the evidence as to what occurred after Jim Dunklin came back with a rock or brick in his hand, which excludes all the testimony objected to, and exceptions reserved by the defendant; but the defendant insisted on its going in evidence, inasmuch as it had been adduced, and thereupon it was allowed by the court to remain in evidence." The bill of exceptions further states, "There was evidence of the defendant's good character."

The court charged the jury, "in connection with the general charge," as follows : (1.) "When you come to look at the evidence in the case that the defendant is a man of good character, you can not look at this to strengthen his testimony when he testifies as a witness for himself." (2.) "The law says, to authorize a conviction with intent to murder, the assault must be with intent to take life with malice." (3.) "If

[Jackson v. The State.]

the jury should not find the defendant not guilty on the evidence, then, if they find that he was first assaulted by Aleck Thomas with a stick, two propositions arise for their consideration: (1) whether defendant assaulted Thomas in heat of blood, which would reduce the offense to assault and battery; and (2) whether defendant assaulted Thomas with intent to take his life with malice, and, if with malice, this would constitute assault with intent to murder."

The defendant excepted to each of these charges as given, and he also excepted to the refusal of the following charges, which were asked by him in writing: (1.) "The burden of proving the alleged intent is on the State; and if the jury are satisfied by the evidence that the defendant, at the time [he] and Thomas were separated, had one of his hands on the throat, and an open knife in his other hand, and had Thomas down under him, and did not cut him, but desisted from cutting of his own will, a presumption arises that he did not have the intent to murder." (2.) "The State is bound to prove that the defendant had the specific intent to murder Aleck Thomas, as charged in the indictment; and if the State has failed to prove to the satisfaction of the jury, beyond all reasonable doubt, that he had the intent to murder said Thomas, they should find him not guilty of the intent to murder." (2.) "If the evidence leaves the minds of the jury in such a state or condition that they are unable to say whether or not the specific intent to murder existed beyond all reasonable doubt, they should find him not guilty of the higher grade of offense charged in the indictment, although they might find him guilty of an assault and battery." (4.) "The defendant is charged with an assault with intent to murder Aleck Thomas with malice aforethought; and I charge you that the defendant must have formed in his mind the specific intent with malice aforethought to take human life, or he is not guilty of this charge; and the evidence must show you that he formed this specific intent beyond all reasonable doubt, or you should acquit him of this." (5.) "If the proof shows you that the defendant struck the blow under the honest belief that his life was in danger, or that he was in fear of having great bodily harm inflicted on him by Aleck Thomas, then they can not convict him of an assault with intent to murder."

STALLWORTH & BURNETT, for appellant, arguing the several exceptions, cited *Walker v. State,* 7 Tex. App. 245; 32 Amer. Rep. 595.

WM. L. MARTIN, Attorney-General, for the State, cited *Gibson v. State*, 89 Ala. 121; *Morgan v. State*, 88 Ala. 223; *Walls v. State*, 90 Ala. 618.

STONE, C. J.—As we understand the facts, when it was made known to the trial court that A. G. Smith, one of the persons from whom a jury was to be selected, had been convicted of a felony in this State, and had not been pardoned, the court declined to exclude him as a juror, unless he was challenged for that cause. The defendant thereupon challenged him for cause, and the court held the challenge well taken. So, the juror, Smith, neither sat upon the jury, nor was his exclusion charged to the defendant as one of his peremptory challenges. It was impossible for this ruling to have done the defendant any injury, and the Circuit Court, in thus ruling, committed no error.

It is certainly much the safer and better practice to exclude illegal testimony when first objected to. This, because of the difficulty of eradicating from the minds of the jury the impression such testimony is liable to make. The succeeding altercation and encounter which the accused had with Dunklin, could certainly shed no light on the question of his prior assault on Thomas, alleged to have been made with intent to murder him. If that testimony had been subsequently excluded from the jury, it would have healed the error.—*Smith v. Maxwell*, 1 Stew. & Por. 221; *Huckabee v. Shepherd*, 75 Ala. 342; *Booker v. State*, 76 Ala. 22; *Cleveland v. State*, 86 Ala. 1; *Childs v. State*, 55 Ala. 28; *Dismuke v. State*, 83 Ala. 287. The court announced it would withdraw all the testimony relating to the altercation and difficulty with Dunklin, to which exceptions had been reserved. This was objected to by defendant's counsel, and thereupon it was permitted to remain before the jury. This was not an error of which defendant can complain.

It is settled in this State, that when a defendant testifies in his own behalf in a criminal prosecution, his proven good character, unless first assailed, is not an evidential circumstance to which the jury may look in determining the credibility of his testimony.—*Morgan v. State*, 88 Ala. 223; *Gibson v. State*, 89 Ala. 121.

An intent to take life is an essential element of the statutory felony, assault with intent to murder, and must be proved to the satisfaction of the jury. But, like the malicious intent in murder, it may be inferred by them from the character of the assault, the use of a deadly weapon, and the other attendant circumstances. No charge should be given which

would authorize a conviction without satisfactory proof that the prisoner entertained such intent. A charge, however, which adds other words or matter by way of particularizing this necessary intent—as, that it must be *positive, deliberate, actual*, or *specific, etc.*—tends to mislead the jury, and should not be given. This, not because the intent need not, as matter of law, be positive, deliberate, actual and specific, to an extent which satisfies the minds of the jury, but because such mode of expression has a tendency to mislead them as to the true measure of convincing proof to authorize a verdict of guilty. *Walls v. State*, 90 Ala. 618; *Allen v. State*, 52 Ala. 391.

Under the principles declared above, the Circuit Court did not err in giving the first and second charges excepted to, nor in refusing charges two, three and four asked by defendant.

When one is menaced with an assault, several inquiries present themselves: *First*, is he free from fault in bringing on the difficulty? *Second*, is there reasonable room and ground for escape from the threatened injury? *Third*, is the threatened assault of such character as, if perpetrated, it is likely to produce death, or *grievous* bodily harm, as that phrase is defined in the books? All these considerations enter into and qualify the right to resist with a deadly weapon.—*Meredith v. State*, 60 Ala. 441; *Washington v. State*, 53 Ala. 29; *Robinson v. State*, 54 Ala. 86; *Ex parte Nettles*, 53 Ala. 268; *Mitchell v. State*, 60 Ala. 28; *Ex parte Brown*, 65 Ala. 446; *Hadley v. State*, 55 Ala. 31.

Construed in the light of the authorities cited, and the principles we have many times declared, the Circuit Court committed no error in giving charge 3 excepted to, and in refusing charge 5 requested. Charge 3 places defendant's right to employ a deadly weapon, in resistance of an impending assault, in as favorable a light as the law authorizes. Charge 5 requested is manifestly faulty. It requires more than "*fear* of having great bodily harm inflicted," to reduce an assault made with a deadly weapon below the grade of felony, if the intent to take life be found to have been entertained. To fully justify such defensive use of a deadly weapon, the danger must be really or apparently imminent, and there must be no other reasonable mode of escape. So, to repel the implication of malice, the party using the deadly weapon must be in real or apparent danger of losing his life, or of suffering grievous bodily harm, and must be free from fault in bringing on the difficulty. Even with these conditions, if there was a previously formed design to use such deadly weapon, this would supply the element of malice, unless the person so using the

[Freiberg v. The State.]

deadly weapon was in real or apparent peril of life or limb, and had no other reasonable mode of escape.

The facts postulated in the first charge asked, if found by the jury, would certainly be circumstances to be weighed by them, in determining whether there was an intent to take life. We suppose they were so weighed, for the jury failed to convict the defendant of an intent to murder. They could not, however, as matter of law, raise the presumption that there was no intent to take life. The defendant may have originally had such intent, and after inflicting many dangerous blows, and having his adversary in his power, he desisted from carrying out his original intention. This charge was properly refused.

Affirmed.