The defendant was indicted and convicted for assault with intent to murder his wife. The trial court fixed his punishment at five years' imprisonment.
 I
Omitting its formal parts the indictment charges that:
 "Wade E. McArdle, whose name is to the Grand Jury otherwise unknown, unlawfully and with malice aforethought, did assault Francis McArdle with the intent to murder her, . . . ."
The defendant contends that this indictment is legally insufficient because it fails to specify the act or acts constituting the alleged assault with intent to murder.
Section 15-8-150 of the 1975 Alabama Code states:
 "The forms of indictment set forth in this section in all cases in which they are applicable, are sufficient, and analogous forms may be used in other cases."
That part of the indictment pertinent to assault with intent to murder is verbatim to Alabama Code Section 15-8-150 (14) (1975) and thus is sufficient in all particulars to advise the accused of that which he must defend. Case law also supports the position that an indictment for assault with intent to murder which follows the code form is sufficient. Buffalow v. State,34 Ala. App. 418, 41 So.2d 417, cert. denied, 252 Ala. 536,41 So.2d 420 (1949); Danley v. State, 34 Ala. App. 412,41 So.2d 414, cert. denied, 252 Ala. 420, 41 So.2d 417 (1949); Stratfordv. State, 32 Ala. App. 249, 24 So.2d 453 (1946); Barber v.State, 23 Ala. App. 584, 129 So. 492 (1930).
Although no objection was raised on the following point, we hold that it was not error for the alleged victim's name to be spelled "Francis" in the indictment rather than "Frances", as she signed her name on the arrest warrant and as her name appears elsewhere in the record. "The mere misspelling of the name of the accused party or of the name of a third person whom it may be necessary to mention, itself will not vitiate an indictment, or produce a fatal variance, unless it is apparent that the misspelling causes a material change in the pronunciation or sound of the two names. Whether one name is idem sonans with another, is not a question of orthography, *Page 899 
but of pronunciation, `depending less upon rule than upon usage. . . .'." Underwood v. State, 72 Ala. 220, 222 (1882).
 II
The defendant next contends that the State did not prove a prima facie case of assault with intent to murder. The trial court overruled the defendant's motion to exclude based on the insufficiency of the evidence and denied the requested affirmative charge.
Construing the evidence in the light most favorable to the State as is required, Ellis v. State, 338 So.2d 428
(Ala.Cr.App. 1976); Colston v. State, 57 Ala. App. 4,325 So.2d 520, cert. denied, 295 Ala. 398, 325 So.2d 531 (1975), the following facts are revealed: Francis McArdle, the defendant's wife, arrived home at 4:45 on the afternoon of August 28, 1978, to find that her husband had not left for his evening shift of work. When she asked the defendant if he were sick he did not answer.
Mrs. McArdle went outside to take her clothes from the clothesline and her son Kevin returned from work. When he entered the house the defendant, his father, "had the rifle in his hands, and he told me to have a seat on the couch".
Mrs. McArdle gathered the clothes and had "come back to the door to come into the house" when her husband met her with the "barrel of a gun". The defendant told her, "Now, you are looking down the end of a barrel. How does it feel? I have been planning on doing this for a year, and today is the day."
The defendant directed his wife to have a seat in the chair across from the couch where Kevin was seated and said:
 "I would kill you now, but my one last ambition is for you to see me kill your daddy. And he reached in his pocket, and he pulled out daddy's truck keys. He said I've got him stranded over there at Rayburn Hall's right now. I've got his truck keys. And we are going to make a little trip. And I want you to see me kill him first. And he said you don't believe I'll shoot. And then he shot."
The defendant, who was standing six to seven feet away, fired four shots in Mrs. McArdle's direction, on both sides and very close to her. "He was just shooting. He wasn't exactly aiming." Mrs. McArdle considered her husband a "good shot". He had always "hunted a lot" and she believed he had done well shooting targets in competition. The defendant then broke a light fixture and a ceramic ashtray with his rifle and continued to brandish the weapon in the faces of Mrs. McArdle and Kevin saying, "see how it looks to see down the end of a barrel".
Mrs. McArdle testified that just before they left on their "trip" she reached for her pocketbook lying on the table which contained her cigarettes and the defendant "jabbed me with the end of the barrel . . and busted a blood vessel in my arm".
The defendant ordered his wife and son to walk outside and "get in the back end of the truck" which he had parked behind some bushes and hidden from view. Mrs. McArdle "heard the gun being reloaded, or something. A clicking in the gun."
The defendant drove to Mr. Hall's house where Mrs. McArdle's father's truck was parked and then "headed back towards Headland and parked beside the road underneath this big oak tree". The defendant said, "(N)ow, we'll wait for him to come. Somebody will come and put him off directly, and you'll get to see me kill him."
After they had been parked beside the road for fifteen or twenty minutes Mr. Hall drove up from town and the defendant told his wife and son, "(I)f he stops, and y'all give me away, I'll kill you now." Mr. Hall stopped, talked a few minutes and left, after which the defendant remarked, "I never should have let him leave here. I should have killed him then. He's gone now to call the law."
The defendant drove back to his father-in-law's truck, but his father-in-law was not there. The defendant continued to curse, harass and threaten his wife and son. Mrs. McArdle stated, "When he would be right in my face talking or harassing me, he *Page 900 
would take a finger, and he would do me like that, in my mouth, and spread them, and grab me in the throat, and Kevin would say Daddy, Daddy, and he would quit. And he looked at me, and he said you look so much like your — you know what kind of daddy, I could cut your head off and hand it back to him on a platter." The defendant stated that he wished Mrs. McArdle's youngest sister were there: "He would love for her to see him kill my daddy, too."
The defendant drove off through a field, stopped, got out of the truck and said to his son, "(H)ow would you like to dig a hole here?" The defendant then changed his mind and said "no, said, we'll wait on digging that hole, because when we dig a hole, it's going to take a big one. So, we'll wait on that. And he kept saying that there was going to be the biggest write-up in the paper tomorrow that there had ever been."
The defendant then drove home and parked his truck behind a utility building so that it could not be seen from the road. He told his wife and son, "(L)et's get out and go in and have a seat and wait for him. He will soon be here." Mrs. McArdle testified that the "phone kept ringing continuously", but "(h)e dared us to answer. . . .".
Joe McArdle, the defendant's oldest son, came over later and asked "Daddy, what's wrong?" The defendant replied, "(Y)ou leave from here now, or I'll kill you". Joe returned later with Officer Jesse Morgan of the Headland Police Department who placed the defendant under arrest.
From the foregoing facts there can be no question that the defendant criminally assaulted his wife.
 "An assault is any attempt or offer, with force or violence, to do a corporal hurt to another, whether from malice or wantonness, with such circumstances as denote, at the time, an intention to do it, coupled with a present ability to carry such intention into effect.
 "To constitute an assault with a gun or pistol, it is necessary that the gun or pistol should be presented at the party charged to be assaulted, within the distance to which the gun or pistol may do execution." Tarver v. State, 43 Ala. 354, 356 (1869).
It is also clear that the defendant committed a criminal battery upon his wife by striking her on the arm with the rifle barrel and by poking her mouth with his finger and grabbing her throat. "A battery is committed, whenever there is a wrongful violence inflicted upon another, without his consent." Murdockv. State, 65 Ala. 520, 522 (1880). Both assault and assault and battery are lesser included offenses of assault with intent to murder. Horn v. State, 98 Ala. 23, 13 So. 329 (1893).
The question we must determine is whether the defendant is guilty of having committed an assault with intent to murder his wife, the crime for which he was charged and convicted.
Assault with intent to murder is an assault with an intent to take life, under circumstances which if successful would constitute murder in either degree. Horn supra; Sanders v.State, 354 So.2d 44 (Ala.Cr.App.), cert. denied, 354 So.2d 48
(Ala. 1977); Bowen v. State, 32 Ala. App. 357, 26 So.2d 205
(1946).
 "When the proof shows that an act was done, or attempted to be done, which in the course of nature was calculated to take life, and the attendant circumstances fail to show a case of self-defense, and fail to show it was brought about by sudden passion aroused by an unprovoked, personal wrong, not less grievous than an assault; or if the circumstances show that the accused made the attempt, pursuant to a formed design, to take life, no matter how recently that design may have been formed, — this is an assault with intent to murder." 98 Ala. at 31, 13 So. at 331.
Intent to take life is an essential element of an assault with intent to murder and it must be proved to the satisfaction of the jury. Jackson v. State, 94 Ala. 85, 10 So. 509 (1892);Sparks v. State, 261 Ala. 2, 75 So.2d 103 (1954); Hall v.State, 348 So.2d 870 (Ala.Cr.App.), cert. denied 348 So.2d 875
(Ala. 1977); Gilmore v. State, 339 So.2d 116 *Page 901 
(Ala.Cr.App.), cert. denied, 339 So.2d 121 (Ala. 1976). Any presumption of intent must be inferred from facts proved so clearly as to leave no reasonable doubt of the intent of the accused to commit murder. Horn, supra. While intent may be inferred by the jury from the character of the assault, the use of a deadly weapon, and other attendant circumstances, Jackson, supra, it is a rule of law in this State that there can be no assault with intent to murder without a present intention, as well as present ability of committing the offense. Marshall v.State, 21 Ala. App. 500, 109 So. 558 (1926), citing Chapman v.State, 78 Ala. 463, 56 Am.Rep. 42 (1885), as authority. Herein lies the difficulty with the defendant's conviction.
The State presented no evidence that the defendant had apresent intention to kill his wife. That the defendant had the present ability to kill her is certain; his rifle was loaded and he was a "good shot". However, the defendant's intention to murder his wife was conditional: "I would kill you now, but my one last ambition, is for you to see me kill your daddy"; "I want you to see me kill him first"; "Now, we'll wait for him to come. Somebody will come and put him off directly, and you'll get to see me kill him"; "Let's get out and go in and have a seat and wait for him. He will soon be here." This evidences an intention to kill at some time in the future.
A conditional offer of violence does not constitute an assault in Alabama, the criminal intent of the assailant being the essence of the crime and not the mere fact of unlawfully putting one in fear, creating alarm in the mind or causing apprehension of immediate battery. Stoutmire v. State,358 So.2d 508, 513 (Ala.Cr.App. 1978). Holding a gun in a threatening position, without any attempt to use it, or intention to do so, is not an assault. State v. Blackwell,9 Ala. 79 (1846); Stoutmire, supra. A gesture that might otherwise seem menacing is not an assault if accompanied by words explaining why no harm is to be inflicted. Stoutmire, supra; Bishop, Criminal Law, Vol. 1, p. 26, § 34 (9th ed. 1973); Anderson, Wharton's Criminal Law and Procedure, Vol. 1, pp. 677-678, § 331.
It cannot be said that the defendant presently intended to kill his wife by firing four shots into the floor near her at close range. This was at most an attempt to scare her, not an attempt to take her life. While malice and intent to murder may be presumed from the act of using a deadly weapon, circumstances may negate that presumption. Snipes v. State,364 So.2d 424, 426 (Ala.Cr.App. 1978). Neither can it be said the defendant presently intended to kill his wife by jabbing her arm with the rifle barrel, or by later poking his finger into her mouth or by grabbing her throat. His purpose had not yet been accomplished. The condition precedent to her murder, her witnessing her father's murder, was never met.
We do not wish to be interpreted as holding that Mrs. McArdle was not assaulted; she was and we have previously so stated. However the offense of assault with intent to murder requires apresent intention to kill. Putting one in fear through a conditional offer of violence to take place at some future time, holding a loaded gun with no intention of using it on the alleged victim, demonstrating physical behavior obviously not calculated to cause death, or using menacing gestures accompanied by assurances that no harm is to be presently inflicted, are all insufficient for a conviction for assault with intent to murder.
Although a present intention to kill is often difficult of direct proof and must be determined of necessity by subjective inferences, those inferences must be substantial. The scintilla rule does not apply in a criminal case. Ex parte Grimmett,228 Ala. 1, 152 So. 263 (1933); Hollingsworth v. State,366 So.2d 326 (Ala.Cr.App.), cert. denied, 366 So.2d 333 (Ala. 1978). Here, those inferences of present intention to kill are simply insufficient to support the jury verdict. A conviction may not rest on speculation.
Because the State's evidence fails to disclose that the defendant ever had the *Page 902 
present intention of killing his wife during any one of the times he assaulted her, the evidence is insufficient to support the conviction of assault with intent to murder. The judgment must be reversed and the cause remanded.
REVERSED AND REMANDED.
HARRIS, P.J., and TYSON and BOOKOUT, JJ., concur.
DeCARLO, J., concurs in result.