LEIGH M. CLARK, Retired Circuit Judge.
This is an appeal from a conviction of an assault with intent to murder and a sentence to imprisonment for ten years.
The victim was Freddie Bates, twenty-two years of age. The relationship between defendant and the victim and the circumstances surrounding the alleged crime are fraught with then existing or previous illicit relations with women, which gave rise to quarrels and violence among all concerned.
According to the undisputed and unquestioned evidence, Bates, while sitting in an automobile, was shot in the middle of an arm by a shotgun in the hands of defendant, standing on the outside of the automobile, while the muzzle of the gun was only a few inches from the arm of Bates. The shot resulted in an almost complete severance of the arm at or about the elbow and a *224 complete surgical amputation and treatment promptly thereafter. At the time of the shooting, an eighteen-year-old girl friend, a former and subsequent roommate of the victim, was in the automobile with him. She was the daughter of the wife of defendant, whom he married about five months before the incident involved and with whom he had lived prior to the marriage. At the time of the shooting, the two were living in a trailer on property owned by the defendant. It was at the trailer one night in June 1978 that the shooting occurred.
In or about the trailer, at the time of the violence that erupted and resulted in the shooting, were defendant’s wife and defendant’s sixteen-year-old son, who was sitting in the trailer looking at the television about the time the shooting occurred.
Bates and his girl friend testified on call of the State. Defendant, his wife and his sixteen-year-old son testified on the call of the defendant.
There was testimony that Bates had been drinking rather heavily. There was also testimony that indicated defendant had been drinking. The evidence is without dispute that there was hard feeling on the part of defendant toward Bates, whether justified or not, that he had ordered Bates off his property before and that upon learning that he was there in the automobile, he ordered him off again, that Bates responded with curses and that defendant took a shotgun and fired twice at the grill of the automobile. In attempting to get away, Bates backed into a tree. Defendant’s version of what occurred then was to the effect that an argument ensued between him and the victim in which the victim insisted that he be allowed to get his car started and off the premises and defendant insisted that he leave the automobile, walk away, and send for a wrecker to get it. Upon the victim’s failure to do so, defendant went to the automobile and, with the barrel of the gun, broke the glass of a window and started poking Bates with the barrel of the gun. His testimony was in part as follows:
“Q. You wanted him to abandon his car and get off the property.
“A. That’s right.
“Q. Okay. That’s when you shot him. When he wouldn’t leave his car.
“A. I tell you the truth. I don’t believe I shot him. The gun just went off.
“Q. Sir, you’re a hunter, aren’t you?
“A. No.
“Q. You use the shotgun. You used it many times. You used the gun many times, haven’t you?
“A. Yes.
“Q. You used this gun many times.
“A. Well, shooting birds.
“Q. You know how that gun works, don’t you?
“A. Yes.
“Q. You knew it was loaded?
“A. Yes, sir. I knowed there was one more—
“Q. And you showed this Jury that you were poking this man just like that and you had your hand on the trigger. Now, you knew what could happen doing that, didn’t you?
“A. I had my hand on down on the stock part of it.
“Q. You knew it could go off, didn’t you?
“A. (No response)
“Q. Didn’t you?
“A. I know it did go off.”
There was evidence tending to show that during the time defendant had the shotgun in his hand he could have shot Bates in the head or in some other vital part of the body. This fact and the circumstances as a whole afford logic to the position taken by appellant that he did not intend to murder Bates. Appellant insists that there was no substantial evidence to show either an intent to kill or malice. There is no disagreement among the parties that to constitute an assault with intent to murder there must be both intent to kill and malice, that an assault with intent to murder is an assault with the intent to take life, under circumstances which if successful would constitute murder, either in the first degree or in the second degree. McArdle v. *225 State, Ala.Cr.App., 372 So.2d 897, cert. denied, 372 So.2d 902 (1979); Sanders v. State, Ala.Cr.App., 354 So.2d 44, cert. denied 354 So.2d 48 (1977); Douglas v. State, 42 Ala. App. 314, 163 So.2d 477 (1963), cert. denied, 276 Ala. 703, 163 So.2d 496 (1964).
Appellant says the instant case is similar to McArdle, supra, in which a conviction for assault with intent to murder was reversed on the ground of the insufficiency of the evidence. In that case, defendant brandished a gun and fired it four times into a floor, but he did not present the gun at the alleged victim and did not fire it in her direction. Appellant says that the instant case is similar also to Smith v. State, 54 Ala.App. 96, 304 So.2d 914 (1974), in which defendant was convicted of manslaughter in the first degree. It was not held therein that the evidence would not have supported a verdict of murder in the second degree. Pertinent to the question now before us, is what was stated at 304 So.2d 918:
“In a prosecution for murder, it is for the jury to determine the claim of the accused that the shooting was accidental. Harrell v. State, 160 Ala. 91, 49 So. 805; Powell v. State, 219 Ala. 557, 123 So. 34; Macon v. State, 36 Ala.App. 651, 63 So.2d 32; McMillan v. State, 44 Ala.App. 216, 205 So.2d 603.”
Perhaps no person knows better than defendant the state of his mind or the state of his heart at the time the gun was fired, but the jury was not required to accept his recollection thereof as testified to by him.
To what we have said, we should add that there was testimony by Bates and by his girl friend that at about the time Bates was wounded, defendant said, “I’ll kill you.” Furthermore, an officer testified that before he started questioning defendant, defendant said, “Hell, yes, I shot him. If I hadn’t run out of shells I would have killed the S.O.B. He brought dope here and I meant to kill him. And at that time I had to stop him.”
Appellant takes the position that there was prejudicial error in the court’s failure to order a mistrial by reason of the effort of the prosecution to show on cross-examination of defendant that he had been convicted of an assault with a gun. Immediately after the question was asked, the following occurred:
“MR. BRUTKIEWICZ: Hold on just a minute. It’s not a crime involving moral turpitude, Judge. I would have to object.
“THE COURT: Well, I’m not so sure about that.
“MR. BRUTKIEWICZ: Assault with a gun is not a crime involving moral turpitude.
“MR. NEWMAN: I withdraw the question.
“MR. BRUTKIEWICZ: All right. Judge, I’d ask Your Honor to instruct the Jury that they shouldn’t give that any confidence.
“THE COURT: All right. I instruct the Jury to disregard that. The question has been withdrawn.
“MR. BRUTKIEWICZ: You know, you knew that was improper.
“MR. NEWMAN: I did not know that was improper.”
Thereupon, counsel for the parties continued to contradict each other as to whether State’s counsel knew the question was improper. At one time, the court reporter’s notes show “(Unintelligible — Both attorneys talking at once.)” After further argument as shown in about one page of the record, the court excused the jury. The argument continued, and, as indicated in about four pages of the proceedings out of the presence of the jury, the particular charge had been nol prossed, though this is not absolutely clear. After the jury returned to the courtroom, it was informed by the court that the State had withdrawn the question, “concerning prior conviction of this man or reputed prior conviction” and instructed the jury “to completely disregard that question and answer.” After asking the jury whether they could “do so,” the court said, “All right,” and proceeded with the rest of the trial. There was little said in the presence of the jury that could have been a valid ground for a mistrial. Nothing that was said would have justified the court’s ordering a mistrial ex mero motu.
*226 Thirty-nine charges were requested in writing by defendant. Eighteen of them were given. Appellant says there was error in refusing each of the twenty-one refused charges, but he makes no particular reference to any one or more of them. We have considered them all and find that any and all of them that state correct propositions of law and were applicable to the evidence in the case were fully covered in substance by the oral charge, or the written given charges, or both. This is especially true as to the applicable principles of law governing the difference between the crime of assault with intent to murder and lesser included offenses. The refusal of none of the requested charges constituted prejudicial error.
We have searched the record for error prejudicial to defendant and have .found none. The judgment of the trial court should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court. The judgment of the trial court is hereby
AFFIRMED.
All the Judges concur.