LEIGH M. CLARK, Retired Circuit Judge.
On a trial without a jury, defendant (appellant) was convicted of an assault upon a peace officer in violation of Code of Ala. 1975, § 13-1 — 41, and sentenced to imprisonment in the county jail for six months.
The only issue raised on appeal is as to the sufficiency of the evidence to support the judgment. Appellant’s only contention in this respect is to the effect that the evidence does not show that the conduct of defendant constituted an assault.
According to the evidence, about 1:00 p. m. on May 25, 1979, while officers of the law were in the course of evicting defendant from the house where she had lived, by unquestioned legal process, she drove up to the premises in an automobile, in which her mother also was riding. When the automobile was stopped, Officer Walter Crook of the Baldwin County Sheriff’s Department walked over to the automobile on the side opposite the driver and said something to her relative to the eviction, which he had previously discussed with her. As to what took place at the time, Officer Crook testified:
“Q. All right. Now, at that particular time, when you were attempting to talk to Mrs. Odom, did she make some disparaging remark?
“A. Yes, sir.
“Q. And what, if anything, happened at that point?
“A. At that point, when the remark was made she reached under the front seat of the vehicle that she was driving, and her mother bent over at the same time; and I immediately went into the car with my feet on the ground and my head in the car and grabbed a handgun and got my left hand between the hammer and the pistol part, which I bruised my hand and I did receive a minor injury from it.
“Q. Did you reach in the vehicle before or after you saw the handgun?
“A. I reached in the vehicle immediately when I saw her going up under the seat, you know, after the remark had been made toward the officers.
“Q. And how far, say from the floorboard was the gun when you managed to get your hands on it.
“A. I plainly observed the gun when I dove into the car, and when she was turning around, like this (indicating), I recognized it.
“Q. If that’s the hammer (indicating) and the gun, here, which hand was on it?
*1081 “A. Well, like I said, I was inside the car, half out and half in; and I was holding the . gun like this. And I did receive a bruise from it.

“Q. Now, after having managed to get your hand on the gun, what did you do next?
“A. It was quite a struggle for approximately, five, six, seven minutes. I’m guesstimating the time. It was just time enough to keep the gun from discharging, and at the same time, protect her mother that was sitting in between us.
“Q. Were you struck at any time during the struggle?
“A. No, sir, I was not struck at any time during the struggle.
“Q. Who else was there at that time?
“A. Officer Tom Nunley with the Sheriff’s Department and Mr. Tom Myrick with the Sheriff’s Department.
“Q. Did you require assistance from anyone else to get that gun from the defendant?
“A. No, sir, I obtained the gun after the struggle and completely took the gun out of her hand. And — well, that answers the question.”
On cross-examination Officer Crook testified:
“Q. The gun was never pointed at you; is that correct, Officer?
“A. I observed the gun coming toward me, but as far as — (interrupted)
“Q. Well, it was still on the floor, it was pointed down and it was in someone’s hand; is that correct?
“A. Yes, sir.
“Q. But it was never pointed at you; is that correct?
“A. Directly at me, no, sir.

“Q. And her arm was still in a down position; is that correct?
“A. No, sir.
“Q. It was not down?
“A. No, sir.
“Q. Where was it? Was it up here?
“A. It was about a forty-five degree.
“Q. Something like this, here? If I was sitting in here and the gun was, here; is that correct?
“A. No, sir.
“Q. Well, that’s about 45 degrees, that’s what I thought.
“A. I’ll be glad to show you if it will clarify it for you.
“Q. That’s what I am wanting, go ahead.
“A. Would you like for me to show you?
“Q. Yes.
“A. Okay. She is sitting in the vehicle, like this, in the car. And her mother is, here; and she reached down, under the seat, like this, and she came out and the gun was coming up about by her mother’s knees in the car, right in this area, right here, in a sitting position. I would say it was parallel to somebody’s knees sitting opposite her, who at the time, it was her mother.
“Q. Right here (indicating)?
“A. Yes, sir.
“Q. Right down here, is that right?
“A. Yes, sir.
“Q. Okay. But the gun was never pointed at you. Is that correct?
“A. No, sir.
“Q. And you say she didn’t strike you at all; is that correct? That’s what you said, you didn’t get hit?
“A. No, sir, I didn’t get hit, no sir.
“Q. Did she bite you?
“A. She attempted to, at one time, yes.
“Q. Okay. Now, did you hit her?
“A. No, sir.”
There was other evidence in the case, including the testimony of two other officers present, who testified as witnesses for the State, and the testimony of defendant, the only witness for the defense. The testimony of the officers corroborated substantially the testimony of Officer Crook. In defendant’s testimony, she said that she was upset about being evicted from her home and further explained her conduct as follows:
“Q. Why did you go under there and get that gun?
*1082 “A. I just went and wanted to get it, because they had my stuff out in the road. I don’t know.
“Q. What were you going to do with it when you got it out?
“A. I wasn’t going to do nothing about it, because I never pointed it at anyone.
“Q. Why did you not point it at anyone?
“A. I just didn’t.
“Q. At any time, isn’t it a fact, that you didn’t, because your mother grabbed your arm; and then, the deputy dived in the car and grabbed the pistol?
“A. Yeah, my mother grabbed my arms and the deputy grabbed the pistol.
“Q. So, you don’t know whéther that gun was loaded; do you not?“A. No, sir.
“Q. So, there is no way that the officer knew that, at that time; is there?
“A. Right.
“Q. So, you didn’t know whether it would fire or not; did you?
“A. No, sir.
“Q. So, there was no way for him to know that; is that right?
“A. No, sir, I don’t know.”
In support of her only contention, appellant cites McArdle v. State, Ala.Cr.App., 372 So.2d 897 (1979), cert, denied, 372 So.2d 902, in which it was held that the evidence was insufficient to support a conviction of assault with intent to murder. As to whether an assault was committed, it is stated at 372 So.2d 900:
“From the foregoing facts there can be no question that the defendant criminally assaulted his wife.
‘“An assault is any attempt or offer, with force or violence, to do a corporal hurt to another, whether from malice or wantonness, with such circumstances as denote, at the time, an intention to do it, coupled with a present ability to carry such intention into effect.
“ ‘To constitute an assault with a gun or pistol, it is necessary that the gun or pistol should be presented at the party charged to be assaulted, within the distance to which the gun or pistol may do execution.’ Tarver v. State, 43 Ala. 354, 356 (1869).”
We do not have the problem whether defendant assaulted the officer with a gun or other “deadly instrument” as inhibited by Code of Ala. § 13-1-42, for the grand jury discretively indicted defendant for nothing more than an assault and battery.
Even as to an assault, however, the fact that the muzzle of the pistol was not presented or pointed in the direction of the officer is worthy of serious consideration. In Lawson v. State, 30 Ala. 14 (1857), we find:
“To constitute an assault there must be the commencement of an act, which, if not prevented, would produce a battery. — State v. Blackwell, 9 Ala. 79; State v. Davis, 23 N.C. 125 [35 Am.Dec. 735]; Bishop on Criminal Law, 409; 2 Archbold’s Criminal Law, (Waterman’s Notes.) 282-83; Roscoe’s Criminal Evidence, 287. The drawing of a pistol, without presenting or cocking it, is not the commencement of such an act. The court erred, therefore, in the charge given.”
The “charge given” was that if the defendant “drew a pistol on the prosecutor, with the intention of shooting him, and was then within shooting distance, then he is guilty of an assault, although the pistol was not cocked or presented.”
Lawson v. State, supra, is the single authority cited in the footnote to the second sentence of 6 Am.Jur.2d, Assault and Battery, § 31:
“The authorities are not agreed on whether the showing of a firearm, unaccompanied by an attempt to use it, is a sufficient overt act to support a charge of criminal assault. One view is that to commit an assault, there must be the commencement of an act which, if not prevented, would produce a battery, and that the drawing of a pistol, without presenting or cocking it, is not such a commencement .... ”
The movement of the pistol by the act of defendant was not the only overt act committed by her. She actually physically *1083 struggled with the officer and with her mother in an effort to move the pistol farther than she did and to move the muzzle thereof more in the direction of the officer. We do not here have a case in which the only force exerted by the accused was in the movement of a pistol, or a part of the pistol by moving the hammer or otherwise cocking it. There was other force directed at the officer, including the attempt to bite him. The case is more like one of the two aspects of Engelhardt v. State, 88 Ala. 100, 7 So. 154 (1889), the other, aspect act being in point as it involved the conduct of shooting a pistol in the direction of the alleged victim and which was held to constitute an assault. The aspect in point, which the court held constituted a battery, was that on the same occasion defendant raised a stick, within striking distance, as if to strike the alleged victim, “which was prevented by his wrenching the stick from the defendant’s hand.” The conduct is further described in Engelhardt v. State, supra, at page 103, 7 So. 154:
“ ... The language describing the contest necessarily implies a contention, or striving together for the mastery, one of the other — a laying hold of each other’s persons in a rude and hostile manner. This was a battery. It may have been justifiable on the part of the person assailed, and no doubt was. But there is no sort of pretext that the act was justifiable on the part of the defendant.”
Although not essential to a correct determination of this appeal, it should be noted that the trial judge had the benefit, which we do not have, of a demonstration by at least one of the witnesses of the struggle between the defendant and Officer Crook, in which defendant’s mother also participated. The court did not go beyond its province in deciding both legally and factually that defendant was guilty. In no other respect is any error claimed, and we find none. The judgment should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court.
AFFIRMED.
All the Judges concur.