TYSON, Judge.
Sylvester Brown was indicted for attempted murder in violation of §§ 13A-6-2 and 13A-4-2, Code of Alabama 1975 as amended. The jury found the appellant “guilty as charged of attempted murder.” He was sentenced to imprisonment in the state penitentiary for a term of 65 years.
James Russell, the victim in this case, testified that on April 19, 1985, he was in the 10th grade at B.C. Rain High School. While he was on his way to a track meet that day at UMS High School, three black males stopped him by standing in the road in front of the vehicle which he was driving. This vehicle was his family’s black and red van.
Immediately after the persons had forced Russell to stop his vehicle, they came to the window and asked him to give them a ride to get some gasoline. He told them he could not because he was late for a track meet. At that point one of them hit him and threw him in the passenger’s seat of the van. Then they all jumped in the van *574 and “threw” Russell in the back. One of the persons was driving the van while two of them were in the back of the van beating Russell up. Both of the two individuals in the back were beating Russell up. At one point one of them took the radio out of the van and began smashing Russell’s face, with this.
At another point one of the persons tried to force another one to hit Russell, threatening to kill him if he did not cooperate. This individual who was threatened eventually left the scene.
After the third person had left, one of the two remaining persons began to drive the vehicle while the other remained in the back of the van beating up Russell. During this time, this person tried to strangle Russell with a sheet and tried to break his neck by twisting his head around.
At some point the van stopped and both of the two persons tried to strangle Russell and break his neck. Eventually the two threw Russell out of the door of the driver’s side of the van and onto the ground. They then began hitting him with “clubs”. “They” then said, “Let’s get in the van and finish him off.” The two then tried to back the van over Russell’s body.
Russell was hospitalized for one week following this incident. He received “a lot” of stitches and a cast was placed on his right arm. Russell was unable to identify any of the three persons involved. He testified that one of the two who was left after one of them left said that “they” were getting him back for the hanging of a black man that had occurred prior to this incident.
On cross-examination Russell testified that the one whom the others tried to force to beat him did not do so while he was in the back of the van. Russell testified that this person asked to drive and was driving the van just before he got out of the van and left the scene. During the incident, after the one individual had left the scene, Russell heard one or both of the persons say on several occasions that they were going to kill him.
Aidan Dowell, a detective with the Mobile Police Department’s Juvenile Division, testified that he was one of the chief investigators involved in this case. He and an Officer Pinson spoke with the appellant at his home on April 22, 1985 concerning the incident. The appellant first told them that he did not know anything about the beating. Later, this appellant, Brown, told Powell that he had been at the scene but had only hit Russell “a couple of times” with a stick.
Dowell testified that he first became aware of appellant’s involvement through “a lady” who had seen appellant earlier that day with the other two black males who had been arrested in the case. Dowell had learned of “the lady’s” name through a sister of one of the suspects. She told him that one of the suspects had told her about the incident and that “some lady around the cornt. ” had seen it.
The victim’s father, James Russell, Jr., testified that he visited his son in the hospital following the incident. He verified the accuracy of the photos depicting his son’s injuries.
Corporal Shannon Poole of the Mobile Police Department testified that he was a detective in the auto theft division on April 26, 1985. On that date he interviewed the appellant and took his statement. The statement, which was read into the record, revealed the following:
The appellant was in a vehicle with Jimmy Simmons and Rickey Hodges when they ran out of gas while on Cedar Crescent Drive. The appellant flagged Russell’s van down. Simmons and Hodges then approached the van. Hodges pushed Russell to the back of the van and was beating him with his fists while Simmons drove the van and the appellant sat in the passenger’s seat.
At some point Simmons struck an object with the van, which jammed the door of the van on the passenger’s side. The appellant then told Simmons to pull over and let him drive. Simmons pulled over and the two switched places. After the appellant had driven for a while, Simmons announced that he did not “ ‘want any part of it’ ” and the appellant drove him to his car. After *575 Simmons had been dropped off, Hodges began driving the van. The appellant was seated in the passenger’s seat at that time and Russell was still in the back.
Eventually, Hodges stopped the van and pulled Russell out and began beating him with a stick. The appellant also hit the victim with the stick just before the two left. Hodges then drove the appellant home and left from there in the van.
Cecil Lawrence Enis, an emergency physician at the hospital where Russell was treated, testified that he treated Russell when Russell first arrived at the hospital on April 19, 1985. He consulted a plastic surgeon because of the severity of the injuries.
Enis testified that the victim’s face was so swollen he could not open his eyes. The victim had a large laceration beside his nose, a scalp laceration and bruises all over his back and on both hands. Enis testified that the victim’s injuries were potentially life-threatening since the swelling of the facial areas in multiple trauma cases often cuts off a patient’s ability to breathe.
On cross-examination Enis testified that without treatment Russell would have survived with severe scarring. He was not in “immediate danger”.
I
The appellant contends that the trial court erred in admitting into evidence photographs of the victim which were taken two days after this incident occurred. He argues that the pictures were introduced solely for the purpose of inflaming the jury and were irrelevant since they were not taken “soon” after the incident. We disagree.
“Generally, photographs are admissible if they are verified by a person familiar with the subject matter of the photograph and if they are relevant to some disputed or material issue, illustrate or elucidate some other relevant fact or evidence, or corroborate or contradict some other evidence offered. Photographs may also be admitted if they have some tendency to shed light on, strengthen, or illustrate other testimony in the case.” (citation omitted.)
Mitchell v. State, 450 So.2d 181 (Ala.Crim.App.1984).
More specifically, this court has held: “It is clear that, in a charge of homicide or other assault, the state may introduce a duly authenticated photograph of so much of the victim’s body as is necessary to show wounds inflicted by the accused.”
C. Gamble, McElroy’s Alabama Evidence, § 207.01(2) (3d ed. 1977); Peterson v. State, 350 So.2d 771 (Ala.Crim.App.1977). Brodka v. State, 53 Ala.App. 125, 298 So.2d 55 (1974).
In addition, “[t]he time span between the time of the occurrence and the taking of the photograph does not render the photograph inadmissible.” Gamble, supra; Hurst v. State, 277 Ala. 686, 688,174 So.2d 325 (1965) (photo taken three days after death).
The State’s witnesses testified that the photographs at issue accurately represented the victim’s injuries. The photographs admitted during the victim’s father’s testimony were, in fact, taken by him a couple of days after the victim was admitted to the hospital. Certainly these photos, which depict the extent of the victim’s injuries, were relevant in this trial. We find no abuse of discretion here.
II
The appellant contends that the trial court erred in denying the appellant’s motion to exclude the evidence made at the close of all the evidence due to the State’s failure to prove a prima facie case of attempted murder. The appellant argues specifically that the State failed to prove that the appellant had the requisite intent to commit murder. We disagree.
“Intent may be presumed from the act of using a deadly weapon, and from the character of the assault, including the nature and amount of force used in inflicting the fatal injury.” Chaney v. State, 417 So.2d 625 (Ala.Crim.App.1982). (citations omitted).
*576 “Intent, ‘being a state or condition of the mind, is rarely, if ever, susceptible of direct or positive proof, and must usually be inferred from the facts testified to by witnesses and the circumstances as developed by the evidence.’ ” Cook v. State, 409 So. 2d 965 (Ala.Crim.App.1981), and cases cited therein.
“In reviewing a conviction based on circumstantial evidence, this court must view that evidence in the light most favorable to the prosecution. The test to be applied is whether the jury might reasonably find that the evidence excluded every reasonable hypothesis except that of guilt; not whether such evidence excludes every reasonable hypothesis but guilt, but whether a jury might reasonably so conclude.”
Cumbo v. State, 368 So.2d 871 (Ala.Crim.App.1978), cert. denied, 368 So.2d 877 (Ala.1979).
The evidence was sufficient to support this appellant’s conviction. The appellant’s own statement revealed that he struck the victim with a “stick of some kind” which was the size of a baseball bat. This occurred, according to the appellant’s own admission, following an already severe beating with fists and other objects. The appellant’s statement removed one of the participants from the scene. The victim testified that after one of the persons left, both of the remaining persons tried to strangle him and break his neck. The victim testified that on several occasions during the incident he heard one or both of the two remaining persons threaten to kill him.
The appellant cites McArdle v. State, 372 So.2d 897 (Ala.Crim.App.), writ denied, 372 So.2d 902 (Ala.1979), in support of his argument. This case is factually distinguishable. There, “the defendant’s intention to murder his wife was conditional: ‘I would kill you now, but my one last ambition is for you to see me kill your daddy....’” McArdle, supra p. 901. (emphasis added). The trial judge committed no error here.
Ill
The appellant contends that the trial judge erred in overruling his objections to certain statements made by the State during its closing argument. The contested statements referred to the jury as being the “conscience of the community.”
“To constitute reversible error, the statement of counsel in argument must be made as a fact which is unsupported by any evidence, and the argument must be pertinent to the issues at trial or its natural tendency must be to influence the finding of the jury.” Sanders v. State, 426 So.2d 497 (Ala.Crim.App.1982). “Counsel for both the defendant and the State are allowed wide latitude on drawing reasonable inferences in their closing arguments.” Sanders, supra.
Furthermore, “[i]t is clear that a district attorney in closing argument may make a general appeal for law enforcement.” Diamond v. State, 363 So.2d 109 (Ala.Crim.App.1978).
We construe such statements as “appeals] to law enforcement.” We find, therefore, that these statements were within the license afforded in closing arguments and did not prejudice the substantial rights of this appellant. The trial judge did not abuse his discretion in overruling the appellant’s objections and denying his motion for a mistrial.
IV
The appellant contends that the trial court erred in denying his motion for mistrial on the grounds that the State discrimi-natorily used its jury strikes to strike all seven blacks from the venire. He urges this court to apply the recent decision of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), which prohibits the racially discriminatory use of peremptory challenges by the government during jury selection.
As the appellant mentions in his brief, his motion in this regard was not made until after a jury was impaneled and sworn. (Brief of appellant p. 36) (R. 3).
In United States v. Erwin, 793 F.2d 656 (5th Cir.1986), the Court held that a motion to strike on these grounds was untimely if not made before the members of the venire *577 were excused. The court noted, “The Court in Batson envisioned that a motion to strike would be made promptly, probably before the venire was dismissed.” Erwin, supra p. 667.
In Erwin, “the appellants waited a full week before moving to strike the panel. Although the jury was not yet impaneled, the trial was about to begin and all of the unselected veniremen had been re-leased_ The court could not have summoned a new venire without greatly delaying the start of the trial.” Erwin, supra (emphasis added).
Because the jury had already been impaneled and sworn in this case before the appellant’s motion was made, we conclude that the motion was untimely and our review of this issue is precluded. Erwin, : supra.
For the above-stated reasons, this cause is due to be and is, hereby, affirmed.
AFFIRMED.
All the Judges concur.